# EXHIBIT A

# **EMPLOYMENT AGREEMENT**

AGREEMENT dated as of November 28, 2016, between Cohen Brothers Realty Corporation, having an office at 750 Lexington Avenue, 28th Floor, New York, New York 10022 (hereinafter referred to as the "Company") and Corinne Arazi, residing at 300 East 75th Street, Apartment 17H, New York, New York 10021 (hereinafter referred to as the "Employee").

In consideration of the mutual covenants and promises in this Agreement, the parties agree as follows:

1. This Agreement is intended to supersede any previous oral or written conditions of employment between the parties.

2. <u>Period of Employment</u>. The period of employment shall commence on Monday, December 5, 2016 (the "Commencement Date"). Either the Employee or the Company may terminate the employment relationship at any time, with or without cause or notice. No representative of the Company, other than Charles Steven Cohen, has any authority to enter into an agreement contrary to the foregoing and may only do so in writing. Neither the terms of compensation set forth in this Agreement, contained in Paragraph 4 below, nor any other provision of this Agreement, shall be construed so as to define, limit or modify the period of employment, which is expressly agreed to as terminable at will by either party. Employee's employment with the Company is and shall be "at will," meaning that either party may terminate employment at any time with or without cause, for any or no reason. In the event Employee elects to terminate the employment relationship provided herein, Employee agrees to provide no less than fifteen (15) working days' written notice of his/her intent to terminate this employment relationship and further agrees that Employee's failure to provide such advance written notice shall be deemed a waiver by Employee of any vacation benefits payable hereunder and accrued to the Employees benefit as of the effective date of such termination.

3. <u>Position and Duties</u>. During the period of actual employment, the Employee shall serve as Executive Assistant. The Employee shall perform all duties that are assigned to the Employee by the Company, and the Employee acknowledges that the position may be changed and duties may be increased, decreased, or otherwise modified at any time in the sole discretion of the Company. The employee shall devote her full time, attention, and energy to the performance of the Employee's duties and use best efforts in furtherance of the interests and business of the Company.

4. <u>Compensation</u>. The Company, commencing on the Commencement Date and during the period of actual employment only, shall pay the Employee a base salary at the annual rate of Ninety Thousand Dollars ($90,000.00).

1

5.  <u>Method of Compensation.</u> The Employee's compensation shall be paid in equal installments in accordance with Company's customary payroll practices, which the Company can modify from time to time with or without notice to the Employee. The Employee shall not be entitled to any compensation in addition to that set forth in paragraph 4 of the Agreement, unless otherwise specified under the Agreement. All payments made to the Employee as compensation shall be subject to all normal and authorized deductions and withholdings as required by federal, state, or local law, governmental regulations or orders, and as required by any agreements between the Company and the Employee providing for payroll deductions.

6.  <u>Noncompetition: Nonsolicitation</u>. The Employee agrees that, the Employee shall not directly or indirectly interfere with, disrupt, or attempt to interfere with or disrupt, the Company's relationships, contractual or otherwise, with its employees, or engage in the solicitation or inducement of employees, customers, or suppliers of the Company to breach, modify, or terminate any agreement(s) or relationship(s) they may have with the Company.

7.  <u>Fringe Benefits</u>. The Employee shall have the right to participate in and receive benefit(s) from any and all plan(s) offered by the Company.

8.  <u>Vacations</u>. The Employee shall be entitled to annual vacation in accordance with the Company's vacation policy outlined in Exhibit A attached herewith, which may be modified by the Company at any time with or without notice to the Employee. Immediately prior to taking any vacation time pursuant to this policy, Employee shall provide her immediate supervisor and Charles S. Cohen with a Vacation Memorandum outlining the status of any and all matters included in Employee's duties and responsibilities.

9.  <u>Death or Disability</u>
    (a) In the event of the Employee's death during the term of this Agreement, this Agreement shall terminate and the Company shall be obligated to pay the Employee's estate only the amount of compensation earned but unpaid as of the date of death.

    (b)  Subject to any obligation imposed by federal, state, or local law, the Company shall have the right to terminate this Agreement in the event the Employee shall become disabled during the term of this Agreement, where the disability prevents the Employee from performing in a reasonable manner all of the Employee's duties under this Agreement for a period of eight (8) consecutive weeks or for a total of twelve (12) weeks during any twelve (12) month period during the term of this Agreement. In the event that the Company terminates this Agreement pursuant to this subparagraph, the Company shall be obligated to pay the Employee only the amount of compensation, if any, earned but unpaid prior to the termination of this Agreement.

10. <u>Exclusivity of Employment</u>. At all times during the term of this Agreement, the Employee will perform services only for the Company, and will not engage in any business or other activity, which may interfere with the performance of the Employee's duties under this Agreement or may conflict or interfere with the business interests of the Company.

11. <u>Definition of Confidential/Proprietary information</u>.
The term "confidential/proprietary information" is defined as trade secrets, patents, copyrighted material, computer software and programs, systems analyses, lists of customers and customer, contracts, and all other products, ideas, processes, designs, discoveries, inventions, improvements, methods, packages, procedures, techniques, written material, financial data, whether or not patentable or entitled to trademark, copyright, or other protection, developed or used in connection with the businesses in which the Company is involved or plans to become involved.

12. <u>Acknowledgment of Access to Confidential/Proprietary Matter</u>. The Employee acknowledges and recognizes that the Employee will have access to confidential/proprietary information during the course of his or her employment.

13. <u>Prohibition Against Disclosure and Use of Confidential/Proprietary Information</u>. During and after the term of this Agreement, the Employee shall not use or disclose, or cause to be used or disclosed, any confidential/proprietary information without the prior written consent of the Company, except in connection with the performance of authorized duties of the Employee. This applies to all confidential/proprietary information regardless of whether Employee or another is or was responsible for or was involved in its conception, development, or production, and regardless of whether the Employee or another conceived, developed or produced it on the Company's premises or with use of the Company's facilities, material, or personnel. The terms of this paragraph shall continue after the expiration or termination of this Agreement.

14. <u>Assignment of Rights to Company</u>. The Employee agrees to and does assign to the Company all of the Employee's rights and interests in any confidential/proprietary information which the Employee has previously conceived, developed, or produced or which the Employee may presently or may in the future conceive, develop, or produce during the term of this Agreement. The Employee shall, at the request of the Company, execute such assignment, certificates, or other instruments as the Company may from time to time deem necessary or desirable to evidence, establish, maintain, perfect, enforce, or defend its right to or its title and interest in or to any such properties. The terms of this paragraph shall continue after the expiration or termination of this Agreement.

15. <u>Prohibition Against Removal of Confidential/Proprietary Information</u>. During the term of this Agreement, the Employee shall not, except in connection with the performance of authorized duties of the Employee, remove or cause to be removed

from the Company's premises any confidential/proprietary information or any other material whatsoever which belongs to the Company.

16. <u>Surrender of All Confidential/Proprietary Information Upon Expiration or Termination of this Agreement</u>. Upon the expiration or termination of this Agreement, the Employee shall surrender and return to the Company all confidential/proprietary information and materials. This obligation to surrender and return all confidential/proprietary material extends to and includes all copies of confidential/proprietary material. No confidential/proprietary information or copies are to be retained by the Employee after the expiration or termination of this Agreement without the prior written authorization of an officer of the Company.

17. <u>Nonrenewable</u>. This Agreement shall not be renewable except in writing and signed by both parties. In the event the Employee shall remain in the employ of the Company on and after the expiration date of this Agreement, the Employee's continuing employment shall be based upon the same terms and written conditions set forth in this Agreement, unless replaced by another agreement between the parties, and shall be terminable at the will of either party.

18. <u>Equitable Relief for Breach</u>.The Employee acknowledges that the Company shall be entitled, in addition to any other remedies it may have at law under this Agreement, to the remedies of injunction, specific performance and other equitable relief for a breach of this Agreement by the Employee. This provision shall not, however, be construed as a waiver of any of the rights which the Company may have for damages.

19. <u>Successors and Assigns</u>. This Agreement is freely assignable by the Company to any person who is a party to a merger or consolidation with the Company. This Agreement is also freely assignable by the Company to a parent, subsidiary, affiliate or division of the Company, or to a corporation or corporations acquiring substantially all of the assets of the Company. The Employee shall not assign any of the Employee's interests, rights, duties, or obligations imposed under this Agreement, and the Employee shall not pledge, transfer, or otherwise encumber the Employee's right to receive compensation under this Agreement without the prior written consent of an officer of the Company.

20. <u>Modification</u>. Any modifications of this Agreement shall not be valid unless they are in writing and are signed by the Employee and the representative of the Company.

21. <u>Personnel Policies</u>. The Company in its sole discretion shall have the right to maintain or establish personnel policies and practices applicable to Employees of the Company. In the event such personnel policies and practices are inconsistent with any term(s) of this Agreement, the term(s) of this Agreement shall govern. The Employee agrees to abide by each and every personnel policy and practice maintained or established by the Company. The Company reserves the right to revise, amend, or

4

terminate any personnel policy or practice it maintains or establishes, with or without prior notice to the Employee.

22. <u>Severability Provision</u>. If any provision of this Agreement is declared invalid, illegal, unreasonable, excessively broad, or incapable of being enforced by any court, all of the remaining provisions of this Agreement shall nevertheless continue in full force and effect and that provision shall be limited in scope so that the remainder of this Agreement is valid and enforceable.

23. <u>Governing Law</u>. This Agreement shall be governed by and construed exclusively and entirely in accordance with the law of the State of New York, except its conflict of laws rules, which are agreed to be inapplicable to the interpretation of this Agreement. The Employee consents to the personal jurisdiction of the courts of the County of New York and the United States District Court for the Southern District of New York and consents to service of process by regular mail at the Employee's last known home address.

24. <u>Waiver</u>. The failure of the Company to insist upon strict adherence to any term of this Agreement shall not be considered a waiver or deprive the Company of the right to insist upon strict adherence to that term or any other term of this Agreement.

25. <u>Statute of Limitation</u>. Any claim which the Employee may assert under this Agreement must be brought within one (1) year from the date the claim arises.

26. <u>Notification of Dispute</u>. Any dispute or claim, legal or equitable in nature, which the Employee may seek to assert under this Agreement, must be brought promptly to the attention of the Company. For a period of thirty (30) days following such notification, the Employee may not pursue the dispute or claim in a judicial or administrative forum in order to allow the Company the opportunity to adjust the dispute. The terms of this paragraph shall continue after expiration or termination of this Agreement.

27. <u>No Contrary Commitment</u>. The Employee represents that the Employee has no commitment or obligation of any kind which is inconsistent with the performance or observance of her obligations and covenants under this Agreement.

28. <u>Complete Agreement</u>. This Agreement constitutes to entire understanding and contains a complete statement of all the agreements between the Employee and the Company and supersedes all prior to contemporaneous verbal or written agreements or communications.

29.  Headings.  The headings in this Agreement are solely for convenience of reference and shall not affect its interpretation.

| Employee: | COHEN BROTHERS REALTY CORPORATION: |
|---|---|
| By: _____<br>Corinne Arazi | By: _____<br>Charles S. Cohen<br>President / CEO |