UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

CORINNE ARAZI, ROSEANN HYLEMON, and :   20 Civ. 08837 (GHW) (SDA)
EVELYN JULIA,   :
  :
                Plaintiffs,   :
  :
        -against-   :
  :
COHEN BROTHERS REALTY CORPORATION,   :
  :
              Defendant.   :

------------------------------------------------------------------ X

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**PARTIAL MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

Michael E. Grenert
Law Office of Michael Grenert, PLLC

Andrea M. Paparella, Esq.
Law Office of Andrea Paparella, PLLC

Attorneys for Plaintiffs

## <u>TABLE OF CONTENTS</u>

FACTS......................................................................................................................1

STANDARD............................................................................................................1

ARGUMENT...........................................................................................................1

I.   HYLEMON AND ARAZI SUFFICIENTLY ALLEGE THEY HAD A "DISABILITY"
     THAT CREATED GREATER RISK FROM COVID-19 UNDER THE NYCHRL AND
     NYSHRL...........................................................................................................1

     A.   Cohen's Contention -- That A Medical Condition Which Constitutes A
          "Disability" Ceases To Constitute A "Disability" When The Accommodation
          Sought Is Based On The Condition's Creating A Greater Risk From A Disease
          Such As COVID-19 -- Directly Contradicts Well-Established Law......................1

     B.   Hylemon Sufficiently Alleges That, (1) When She Requested A Reasonable
          Accommodation In March 2020, MS Was Believed To Be A Condition That
          Increases The Risk For COVID-19, Including By Her Doctor, And (2) When She
          Requested A Reasonable Accommodation In March 2020, Her Starting A
          Corticosteroid Treatment For MS Was Believed To Create Greater Risk From
          COVID-19, Including By Her Doctor.....................................................................7

II.  ARAZI SUFFICIENTLY ALLEGES ON HER ASSOCIATIONAL DISABILITY
     DISCRIMINATION CLAIM THAT COVID-19 IS A "DISABILITY" UNDER THE
     NYCHRL AND NYSHLR...................................................................................8

III. PLAINTIFFS STATE A CLAIM FOR VIOLATION OF NYLL § 740...............................11

     A.   Defendant's "activity, policy or practice" that was
          "in violation of law, rule or regulation"...............................................................11

     B.   Defendant's "violation creates and presents a substantial and specific danger
          to the public health or safety"............................................................................13

IV.  ARAZI AND HYLEMON SUFFICIENTLY STATE GENDER-BASED
     HOSTILE WORK ENVIRONMENT CLAIMS..................................................................15

     A.   Hylemon's Claim Is Not Barred By The Statute Of Limitations...........................15

     B.   Applicability Of "Severe Or Pervasive" Standard To NYSHRL Claims...............18

     C.   Arazi And Hylemon's Allegations Are Not Conclusory.........................................18

     D.      Hearsay In A Complaint Must Be Considered On A Motion To Dimiss.................19

     E.      Arazi And Hylemon State Claims Under The NYCHRL........................................20

V.     PLAINTIFFS STATE CLAIMS FOR RETALIATION
IN VIOLATION OF THE NYCHRL AND NYSHRL.......................................................22

VI.    PLAINTIFFS STATE CLAIMS FOR RETALIATION
IN VIOLATION OF THE FLSA AND NYLL § 215.........................................................25

## **TABLE OF AUTHORITIES**

Cases

Anderson v. State of N.Y., 614 F. Supp. 2d 404 (S.D.N.Y. 2009).....................................................24

Ashcroft v. Iqbal, 556 U.S. 662 (2009).............................................................................................1, 22

Ayres v. 127 Rest. Corp., 12 F. Supp. 2d 305, 311 (S.D.N.Y. 1998).................................................25

Barker v. Peconic Landing at Southold, Inc., 885 F. Supp. 2d 564 (E.D.N.Y. 2012).....................14

Bar-Tur v. Arience Capital Man., 490 Fed. Appx. 392 (2d Cir. 2012).............................................6

Bar-Tur v. Arience Capital Man., No. 09-civ-2653, 2011 WL 565333 (S.D.N.Y. Feb. 9, 2011).....6

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)...........................................................................1

Bennett v. Health Mgmt. Sys., Inc., 936 N.Y.S.2d 112 (1st Dep't 2011)........................................21

Bompane v. Enzolabs, Inc., 608 N.Y.S.2d 989 (Sup. Ct. 1994)................................................14-15

Bonner v. Guccione, 178 F.3d 581 (2d Cir. 1999)...........................................................................17

Breitstein v. Michael C. Fina, 2016 N.Y. Misc. LEXIS 3591 (N.Y. Cnty 2016)............................20

Calhoun v. Laidlaw & Co., No. 20-cv-6174 (GHW) (S.D.N.Y. Dec. 18, 2020).......................23-24

Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158 (2d Cir. 2006)..........................23

Cronin v. St. Lawrence, No. 08-CV-6346 (KMK), 2009 WL 2391861
(S.D.N.Y. Aug. 5, 2009)....................................................................................................................24

Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000).........................................................16

Debell v. Maimonides Med. Ctr., No. 09-CV-3491, 2011 WL 4710818
(E.D.N.Y. Sept. 30, 2011)..................................................................................................................9

Encarnacion v. Isabella Geriatric Ctr., Inc., No. 1:11-CV-3757-GHW,
2014 WL 7008946 (S.D.N.Y. Dec. 12, 2014)...................................................................................24

Garrigan v. Ruby Tuesday, Inc., No. 14 CIV. 155 LGS, 2014 WL 2134613
(S.D.N.Y. May 22, 2014)...................................................................................................................20

Giordano v. City of New York, 214 F.3d 740 (2d Cir. 2001).......................................................3, 10

Gorzynski v. Jet Blue Airways Corp., 596 F.3d 93 (2d Cir. 2010).....................................23

Grant v. Bethlehem Steel Corp., 622 F.2d 43 (2d Cir. 1980)..........................................23

Hagan v. City of N.Y., 39 F. Supp. 3d 481 (S.D.N.Y. 2014)............................................18

HC2, Inc. v. Delaney, 2020 WL 7480675, 2020 U.S. Dist. LEXIS 239308
(S.D.N.Y. Dec. 18, 2020)...............................................................................................12

Inman v. City of New York, No. 08 CV 8239 DAB, 2011 WL 4344015
(S.D.N.Y. Sept. 13, 2011)...............................................................................................21

Jacobsen v. N.Y.C. Health & Hosps. Corp., 22 N.Y.3d 824 (2014).................................10

Jamiel v. Maison Kayser@USA.com, No. 119CV01389GBDSDA, 2019 WL 9362541
(S.D.N.Y. Dec. 19, 2019), report and recommendation adopted sub nom. Jamiel v. Viveros,
No. 19CIV1389GBDSDA, 2020 WL 1847566 (S.D.N.Y. Apr. 13, 2020)........................21

J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107 (2d Cir. 2004)..................................20

Kassner v. 2d Ave. Delicatessen Inc., 496 F.3d 229 (2d Cir. 2007).................................18

Lenart v. Coach Inc., 131 F. Supp. 3d 61 (S.D.N.Y. 2015)..............................................22

Littlejohn v. City of N.Y., 795 F.3d 297 (2d Cir. 2015)....................................................22

Mayers v. Emigrant Bancorp, Inc., 796 F. Supp. 2d 434 (S.D.N.Y. 2011)......................22

Morgan v. NYS Atty. Gen.'s Off., No. 11 CIV. 9389 PKC JLC, 2013 WL 491525
(S.D.N.Y. Feb. 8, 2013)..................................................................................................17

Nat'l R.R. Passenger Corp. (Amtrak) v. Morgan, 536 U.S. 101 (2002)......................16-17

Peeples v. Clinical Support Options, Inc., 487 F. Supp. 3d 56 (D. Mass. 2020)..............10

People ex rel. Nevins v. Brann, 122 N.Y.S.3d 874 (N.Y. Sup. Ct. 2020)....................13-14

Petrosino v. Bell Atl., 385 F.3d 210 (2d Cir. 2004)..........................................................17

Prince v. Madison Square Garden, 427 F. Supp. 2d 372 (S.D.N.Y. 2006)......................20

Rasmy v. Marriott Int'l, Inc., 952 F.3d 379 (2d Cir. 2020).........................................22, 23

Reilly v. Revlon, Inc., 620 F.Supp.2d 524 (S.D.N.Y. 2009)...............................................3

Remba v. Fed'n Employment & Guidance Serv., 76 N.Y.2d 801 (1990).........................15

Reyes v. Energy Transp. Corp., No. 96 CIV. 3321 (JSM), 1997 WL 256923
(S.D.N.Y. May 16, 1997)..........................................................................................15

Rodgers v. Lenox Hill Hosp., 626 N.Y.S.2d 137 (1st Dep't 1995)...................................14

Sanderson v. Leg Apparel LLC, No. 1:19-CV-8423-GHW, 2020 WL 7342742
(S.D.N.Y. Dec. 14, 2020).........................................................................................20

Silver v. City of Alexandria, 470 F. Supp. 3d 616 (W.D. La. 2020)................................10

Simmons v. Woodycrest Ctr. for Human Dev., Inc., No. 10 Civ. 5193(JSR),
2011 WL 855942 (S.D.N.Y. Mar. 9, 2011)...................................................................5

Suggs v. Port Auth. of N.Y. & N.J., No. 97 CIV. 4026 RPP, 1999 WL 269905
(S.D.N.Y. May 4, 1999)...........................................................................................24

Summa v. Hofstra Univ., 708 F.3d 115 (2d Cir. 2013).................................................23

Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)........................................................1

Torres v. Pisano, 116 F.3d 625 (2d Cir.1997)............................................................18

Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72 (2d Cir. 2015)....................1, 24

Velez v. Girraphic LLC, No. 20 CIV. 5644 (JPC), 2021 WL 1873233
(S.D.N.Y. May 10, 2021)............................................................................................9

Villarin v. Rabbi Haskel Lookstein Sch., 942 N.Y.S.2d 67 (1st Dep't 2012)..................14

Williams v. New York City Hous. Auth., 872 N.Y.S.2d 27 (1st Dep't Jan. 27, 2009).......18, 20-21

Wilson v. N.Y.P. Holdings, Inc., 2009 WL 873206, 2009 U.S. Dist. LEXIS 28876
(S.D.N.Y. Mar. 31, 2009).........................................................................................20

Statutes

NYCHRL § 8-102...................................................................................................1

NYCHRL, Local Law 85 § 3/N.Y.C. Admin. Code § 8-107(7).......................................23

NYCHRL Restoration Act of 2005, Local Law 85 § 7 (Oct. 3, 2005),
N.Y.C. Admin. Code § 8-130(a).................................................................................6

NYCHRL, Local Law 35 § 1-2 (Mar. 28, 2016), N.Y.C. Admin. Code § 8-130(b)..................6, 21

New York Labor Law § 740...............................................................................11, 12, 14

NYSHRL § 292(21)(a)..................................................................................................................2

N.Y. Executive Law § 300 (effective Aug. 12, 2019)................................................................6, 23

## FACTS

The facts are set forth in the Third Amended Complaint ("TAC").

## STANDARD

In deciding a motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure

12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences are

drawn in the non-moving party's favor. Vega v. Hempstead Union Free Sch. Dist., 801 F.3d

72, 78 (2d Cir. 2015). Even after Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atl. Corp.

v. Twombly, 550 U.S. 544 (2007), established the "plausibility" standard, "*Swierkiewicz [v.

Sorema N.A.*, 534 U.S. 506 (2002)]'s rejection of a heightened pleading standard in

discrimination cases remains valid," and a plaintiff need not allege facts establishing a prima

facie case on a motion to dismiss but only facts that provide "at least minimal support for the

proposition that the employer was motivated by discriminatory intent." Vega at 84-87.

## ARGUMENT

I.    **HYLEMON AND ARAZI SUFFICIENTLY ALLEGE THEY HAD A "DISABILITY" THAT CREATED GREATER RISK FROM COVID-19 UNDER THE NYCHRL AND NYSHRL**

A.    **Cohen's Contention -- That A Medical Condition Which Constitutes A "Disability" Ceases To Constitute A "Disability" When The Accommodation Sought Is Based On The Condition Creating A Greater Risk From A Disease Such As COVID-19 -- Directly Contradicts Well-Established Law**

Defendant *concedes* that Hylemon's MS[1] "is a disability" as defined by the NYCHRL

and NYSHRL. (Def. MOL p. 6)[2] Defendant contends instead that a medical condition like MS

---

[1] MS is a disease in which the immunological and neurological systems are impaired and not functioning normally. (TAC ¶¶ 119, 121)

[2] Under the NYCHRL § 8-102, "[t]he term 'disability' means any physical, medical, mental or psychological impairment, or a history or record of such impairment. As used in this definition: 1. Physical, medical, mental, or psychological impairment. The term 'physical, medical, mental, or psychological impairment' means: (a) An *impairment of any system of the body*; including, but not limited to, *the neurological system*; the musculoskeletal system; the special sense organs and respiratory organs, including, but not limited to, speech organs; the cardiovascular system; the reproductive system; the digestive and genitourinary systems; the hemic and lymphatic systems; *the immunological systems*; the skin; and the endocrine system; or…." (Emphasis added.)

that constitutes a "disability" under the NYCHRL and NYSHRL transmutes into a condition that is not a "disability" if the accommodation sought is due to the condition's creating a higher risk from a disease like COVID-19. Defendant's argument is directly contrary to the law and, if accepted, would have enormous implications. An employee with a medical condition that puts them at greater risk from COVID-19, including of death, would have no right whatsoever to request any accommodations. Similarly, an employee with a medical condition that puts them at greater risk from the COVID-19 vaccines would have no right to request an accommodation from an employer that requires all employees to be vaccinated. Defendant's argument about the lack of such legal protections is unfortunately consistent with its treatment of Plaintiffs and other employees -- Defendant expects its employees to risk their lives or lose their jobs. Defendant now contends that the law allows employers to take that approach, with no obligation to provide reasonable accommodations to employees with medical conditions that put them at greater risk from diseases like COVID-19, leaving such employees with the choice of risking their lives or losing their jobs. Defendant makes these arguments in the midst of a pandemic despite the broad definitions of "disability" in the NYCHRL and NYSHRL and the repeated amendments of those laws emphasizing that they should be liberally construed to maximally protect employees.

The New York City Commission on Human Rights ("City Commission") has expressly rejected Defendant's interpretation of the NYCHRL. In a May 29, 2020 publication entitled "Employment Questions Related To COVID-19 And Remote Work," the City Commission provided the following guidance: "What does the New York City Human Rights Law require of employers if an employee seeks to continue working remotely to limit exposure to COVID-19 because of one of the following? ... (ii) *Risks of complication related to an underlying*

---

Under the NYSHRL § 292(21)(a), "[t] he term 'disability" means (a) a physical, mental or medical *impairment* resulting from anatomical, physiological, genetic or *neurological* conditions which *prevents the exercise of a normal bodily function* or is demonstrable by medically accepted clinical or laboratory diagnostic techniques". (Emphasis added.)

*disability: An employee is entitled to reasonable accommodations related to a disability, and that remains true when the disability puts them at increased risk of complications from COVID19.*"    https://www1.nyc.gov/assets/cchr/downloads/pdf/materials/COVID-employment-faq.pdf

Even under the ADA, which provides less protection for employees with disabilities than the NYCHRL and NYSHRL, the EEOC has rejected Defendant's position. Reilly v. Revlon, Inc., 620 F.Supp.2d 524, 541 (S.D.N.Y. 2009), *citing* Giordano v. City of N.Y., 214 F.3d 740, 753 (2d Cir. 2001) ("New York State Executive Law and the New York City Administrative Code have a broader definition of `disability' than does the ADA"). The EEOC has made clear that "*employees with disabilities that put them at high risk for complications of pandemic influenza may request telework as a reasonable accommodation to reduce their chances of infection during a pandemic*." https://www.eeoc.gov/laws/guidance/pandemic-preparedness-workplace-and-americans-disabilities-act (section III.B.10.) (emphasis added). In a publication aimed at employees entitled "Federal Laws Protect You Against Employment Discrimination During the COVID-19 Pandemic," under the heading "I Am High Risk and I Need Extra Protection From Getting Sick," the EEOC flatly stated that "If you have a medical condition that makes you '*high risk*,' or a mental health condition that makes it difficult to come to work, you may be able to *work from home as a 'reasonable accommodation.'*" https://www.eeoc.gov/federal-laws-protect-you-against-employment-discrimination-during-covid-19-pandemic (emphasis added). The EEOC provided similar guidance that:

> What are an employer's ADA obligations when an employee says that he has a *disability that puts him at greater risk of severe illness if he contracts COVID-19, and therefore he asks for reasonable accommodation*? The CDC has identified a number of medical conditions -- including, for example, chronic lung disease and serious heart conditions -- as potentially putting individuals at higher risk. Therefore, this is clearly a request for reasonable accommodation, meaning it is a request for a change in the workplace due to a medical condition. Because the ADA would not require an accommodation where the employee has no disability, the employer may verify that the employee does have a disability, as well as verifying that the accommodation is needed because the

particular disability may put the individual at higher risk. ... If the employer is waiting to receive documentation, it may want to provide the accommodation on a temporary basis. This could be particularly critical where the request is for *telework* or leave from an employee whose disability puts them at higher risk for COVID19 --from COVID-19. https://www.eeoc.gov/transcript-march-27-2020-outreach-webinar#q17 (emphasis added).

The EEOC has further provided similar guidance that employers are obligated to provide "*reasonable accommodations* that could offer protection to an individual whose *disability puts him at greater risk from COVID-19* and who therefore requests such actions to eliminate possible exposure." https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (at section D.1.) (emphasis added); see also https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (at section G.3.) ("What does an employee need to do in order to request *reasonable accommodation from her employer because she has one of the medical conditions that CDC says may put her at higher risk for severe illness from COVID-19*? *(5/5/20)* An employee—or a third party, such as an employee's doctor—must let the employer know that she needs a change for a reason related to a medical condition (here, the underlying condition). ... After receiving a request, the employer may ask questions or seek medical documentation to help decide if the individual has a disability and if there is a reasonable accommodation, barring undue hardship, that can be provided." (emphasis added)); cf.        https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (at section K.1.) ("In some circumstances, Title VII and the ADA require an employer to provide reasonable accommodations for employees who, because of a disability or a sincerely held religious belief, practice, or observance, do not get vaccinated for COVID-19").

Defendant's position thus flies in the face of very well-established legal principles concerning reasonable accommodations for conditions that create a greater risk from COVID-

19 or other diseases. The legal principle Defendant is asking the Court to establish would turn reasonable accommodation law upside down.

Nor does the case law support Defendant's position. Defendant cites Simmons v. Woodycrest Ctr. for Human Dev., Inc., No. 10 Civ. 5193(JSR), 2011 WL 855942 (S.D.N.Y. Mar. 9, 2011), for the proposition that "[b]eing at high risk or higher risk of developing a severe form of an illness one has never had and for which she has no physical manifestations ... is not a disability." (Def. MOL p. 8) However, the above definitions of "disability" in the NYCHRL and NYSHRL do not require "physical manifestations" on their face. In any event, the Simmons case that uses the "physical manifestations" phrases is readily distinguishable. Simmons uses that phrase merely to hold that to have a "disability," the person must actually have a physical condition, not just be at risk for one. So the court there held that the plaintiff's grandchild that had been prenatally exposed to the HIV virus and unnamed illicit drugs was not disabled where the "child is HIV negative" and there was "no evidence demonstrating that the child suffers from…a disability which can be referred to as drug withdrawal." Id. at *3. The equivalent to Simmons in Hylemon's case would be if Hylemon claimed she had a "disability" merely because she had been exposed to someone in the office who had COVID-19, but tested negative for it herself, and *did not have MS*. These are not the facts here, as Hylemon has MS.

The court in Simmons also held that high blood pressure was not a disability despite creating risk of other serious ailments where the plaintiff "cites no authority for her assertion that high blood pressure, at least when, as in Simmons' case, well-controlled, constitutes a disability under New York law," and "the record evidence confirms that, during the relevant time period of March and April of 2010, Simmons was not in an acute state of ill health that would justify her absence from a week of work." Id. at *4. Here, however, Defendant has *conceded* that MS "is a disability." (Def. MOL p. 6)

Moreover, much more analogous, and more recent, and more binding because it is a Second Circuit decision rather than Southern District, is <u>Bar-Tur v. Arience Capital Man.</u>, 490 Fed. Appx. 392 (2d Cir. 2012). The Second Circuit in <u>Bar-Tur</u> reversed summary judgment to the defendant, holding that the plaintiff had presented sufficient evidence of a protected disability under the ADA because she had Common Variable Immunodeficiency, "a genetically determined primary *immunity deficiency* that interferes with a patient's ability to produce sufficient antibodies in response to exposure to pathogens, resulting in *greater vulnerability to viruses*, infections, bronchitis, and pneumonia." <u>Id.</u> at 395 (emphasis added). The district court had already found that her condition, as "a *deficiency of the immune system*," was a disability under the broader NYSHRL and NYCHRL, so that was not an issue on the plaintiff's appeal. <u>Bar-Tur v. Arience Capital Man.</u>, No. 09-civ-2653, 2011 WL 565333 (S.D.N.Y. Feb. 9, 2011) (emphasis added) (noting that the NYCHRL and NYSHRL have broader definitions of "disability" than the ADA).[3]

Finally, while Hylemon and Arazi have sufficiently alleged that they each have a "disability," they also allege that they were each perceived to have a "disability." Defendant has not moved to dismiss that aspect of their claims, and should not be permitted to for the first time in a reply brief.

---

[3] NYCHRL's Restoration Act of 2005 states that "The provisions of this [chapter] title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed." Local Law 85 § 7 (Oct. 3, 2005); N.Y.C. Admin. Code § 8-130(a). The NYCHRL was amended yet again in 2016 to re-emphasize that the NYCHRL should be construed liberally and "maximally protective of civil rights in all circumstance" and that some court decisions (not all) had properly followed the liberal construction mandate after the 2005 amendment. Local Law 35 § 1-2 (Mar. 28, 2016); N.Y.C. Admin. Code § 8-130(b). The NYSHRL was amended in 2019 to include section 300, which similarly states that "The provisions of this article shall be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed." N.Y. Executive Law § 300 (effective Aug. 12, 2019).

**B. Hylemon Sufficiently Alleges That, (1) When She Requested A Reasonable Accommodation In March 2020, MS Was Believed To Be A Condition That Increases The Risk For COVID-19, Including By Her Doctor, And (2) When She Requested A Reasonable Accommodation In March 2020, Her Starting A Corticosteroid Treatment For MS Was Believed To Create Greater Risk From COVID-19, Including By Her Doctor**

Defendant asks this Court to decide disputed issues of fact concerning complicated medical issues based on information outside the face of the TAC on a motion to dismiss.

Hylemon alleges in the TAC as follows.

119.    On March 15, 2020, Ms. Hylemon emailed to Mr. Cherniak and Human Resources her doctor's note advising that Ms. Hylemon should not travel into the office Manhattan because her immune system was compromised due to Multiple Sclerosis (MS).

120.    Ms. Hylemon's doctor was Sylvia Klineova, Assistant Professor of Neurology at the Corinne Goldsmith Dickinson Center For Multiple Sclerosis at Mount Sinai Medical Center.

121.    MS is a disease in which the immunological and neurological systems are impaired and not functioning normally.

122.    At that time, the medical community believed that people with MS, an autoimmune disease, were at higher risk for COVID-19 due to their condition.

123.    Currently, the medical community believes that people with progressive MS, like Ms. Hylemon, are more susceptible to having a severe case of COVID-19.

124.    Ms. Hylemon is expected to start taking a medication soon that the medical community believes also increases the chance of having a more severe form of COVID-19.

127.    On March 16, 2020, Ms. Hylemon ... texted Mr. Cherniak "... I have a doctor's note. My immune system is compromised due to the MS. If you think I'm not there, just because. Then you are completely wrong."

193.    [In February 2021], Cohen Brothers also refused to grant Ms. Hylemon's request for a reasonable accommodation of being allowed to work from home due to her disability of multiple sclerosis. Ms. Hylemon informed Cohen Brothers that she was about to start taking a medication for MS called Ocrevus, which would further compromise her immune system and increase her risk for viruses and infections and create a higher risk of a severe case of COVID-19. She provided a doctor's note requesting the work-from-home accommodation.

The issue of whether MS increases COVID-19 risk arises at two different points in time when Hylemon requested reasonable accommodations -- March 2020, just before she was furloughed, and February 2021, just before her employment was terminated. In March 2020,

7

both Ms. Hylemon's doctor (TAC ¶ 119), and more broadly the medical community (TAC ¶ 122), believed that people with MS were at higher risk for COVID-19. And while that medical consensus about MS generally later changed to a degree, that is irrelevant, and even the current medical consensus is that those like Hylemon with progressive MS are more susceptible to severe COVID-19. (TAC ¶ 123) In February 2021, Hylemon was starting to take Ocrevus, a corticosteroid treatment for MS. The NYC Health Guidelines Defendant cites as not listing MS do include "immune deficiencies,... use of corticosteroids or use of other immune weakening medicines" on the list of conditions with increased risk for severe illness from COVID-19. (Def. Ex. 1) MS is an "immune deficiency," so the fact that it is not specifically listed is irrelevant. And Hylemon was going on corticosteroids.

In any event, a disputed factual scientific issue should not be decided based on dueling Google searches on a motion to dismiss. Moreover, Hylemon also alleges she was perceived to have a disability. There is no evidence on the face of the TAC that Defendant researched MS, and denied Hylemon's request for a reasonable accommodation it concluded that, despite her doctor's note, MS did not actually increase risk from COVID-19. That is partly what the required interactive process is for, and Defendant did not pursue that issue.

## II.   ARAZI SUFFICIENTLY ALLEGES ON HER ASSOCIATIONAL DISABILITY DISCRIMINATION CLAIM THAT COVID-19 IS A "DISABILITY" UNDER THE NYCHRL AND NYSHLR

In another assertion that would have major consequences, Defendant contends that COVID-19 is not a "disability" under the NYCHRL and NYSRL, and that therefore Arazi has no protection from discrimination based on her partner's having or being perceived as having COVID-19. In the midst of a pandemic, after the NYCHRL and NYSRL have been repeatedly amended to require liberal construction to protect employees, Defendant asks the court to issue a ruling which would mean that employees with COVID-19 may be summarily terminated without legal recourse, and have no legal right to any reasonable accommodations.

Defendant contends that no court has held that having COVID-19 is a "disability" under the NYSHRL and NYCHRL. This is false. <u>Velez v. Girraphic LLC</u>, No. 20 CIV. 5644 (JPC), 2021 WL 1873233, *6 (S.D.N.Y. May 10, 2021) ("Girraphic also contends that the Court should not consider COVID-19 or suspected COVID-19 to be a disability for "public policy" reasons. *See* Dkt. 27 at 3-5. But Girraphic utterly fails to ground this argument in the text of the NYCHRL, which provides an expansive definition of "disability" to include a "physical ... impairment," defined as "[a]n impairment of any system of the body." N.Y.C. Admin. Code § 8-102. Accordingly, the Court denies Girraphic's motion to dismiss Velez's intentional discrimination claims.)".

Furthermore, the NYC Commission on Human Rights explicitly states that "[h]arassment and discrimination on the basis of race, national origin, age, *and disability (including having COVID-19* or another serious illness) is illegal under the New York City Human Rights Law." https://www1.nyc.gov/site/cchr/media/covid19.page (emphasis added). Defendant has acknowledged that such statements are entitled to deference. (Def. MOL p. 9 n.2)

Defendant's cites to federal ADA law are inapplicable since the definition of "disability" is narrow under the ADA than under the NYCHRL and NYSHRL. First, most obviously, while the ADA contains a specific express "transitory and minor" impairment exception, 42 U.S.C. § 12102(3)(B), the NYCHRL and the NYSHRL do not (see footnote 2 above). <u>See, e.g.</u>, <u>Debell v. Maimonides Med. Ctr.</u>, No. 09-CV-3491, 2011 WL 4710818, at *6 (E.D.N.Y. Sept. 30, 2011) (finding that a reasonable jury could conclude that plaintiff with psoriasis, a condition in which skin cells build up and form scales and itchy, dry patches, had a disability within the meaning of the NYCHRL, even though plaintiff failed to establish a cognizable disability under the ADA). Second, while under the ADA an impairment qualifies as a "disability" only if it "substantially limits one or more major life activities of such

individual," 42 U.S.C. § 12102(1)(A), the NYCHRL and NYSHRL contain no such requirement (see footnote 2). Giordano, supra, 214 F.3d at 754 (2d Cir 2001)."), *overruled on other grounds*, Jacobsen v. N.Y.C. Health & Hosps. Corp., 22 N.Y.3d 824, 836 (2014). Third, factually, ample evidence exists that COVID-19 is not "transitory and minor" in any event. There have been over 3.7 million deaths from COVID-19. https://covid19.who.int/ Some "long-haulers" suffer long-term debilitating symptoms from COVID-19. https://www.healthline.com/health-news/covid-19-long-haul-symptoms-may-be-caused-by-changes-in-genes#Study-looks-at-gene-expression Defendant recycles the long-debunked misinformation that COVID-19 can be compared to the flu (just as Defendant's executives did in the office, TAC ¶ 107) and thus is "transitory and minor." (Def. MOL pp. 10-11) It isn't similar to or like the flu as Defendant asserts (Def. MOL p. 10). https://www.jhsph.edu/covid-19/articles/no-covid-19-is-not-the-flu.html

In any event, COVID-19 has been held to be a "disability" even under the ADA. Peeples v. Clinical Support Options, Inc., 487 F. Supp. 3d 56, 63 (D. Mass. 2020) (asthma creating a "higher risk for serious illness or even death if they contract "COVID-19" constituted a "disability" under the ADA); Silver v. City of Alexandria, 470 F. Supp. 3d 616, 622 (W.D. La. 2020) ("We find easily that [plaintiff] has a qualifying disability. That results, in substantial part, from the existence of the COVID-19 pandemic in our nation, and the existence of his obvious comorbidities. Defendants argue that he is not entitled to claim those disabilities BECAUSE they are only COVID-related. In other words, because his disabilities are only situational, he cannot avail himself of the accommodations provided for by the ADA/RA. Such an argument fails, however, because of the simple and logical explanation of things the way they are. Neither the ADA nor the Rehabilitation Act contain any language to limit application to certain environmental or health-related situations. It makes complete sense to say that any application of these laws to these facts must be based upon a factual analysis that considers the

totality of [plaintiff's] health circumstances in conjunction with one's social circumstances. Call it a totality of the circumstances evaluation. The determination of a qualifying disability in this case cannot be looked at in a vacuum.").

COVID-19 therefore is a "disability" under the NYCHRL and NYSHRL, or at least it is sufficiently alleged to be for purposes of a motion to dismiss.

## III.   PLAINTIFFS STATE A CLAIM FOR VIOLATION OF NYLL § 740

NYLL § 740 provides that

> An employer shall not take any retaliatory personnel action against an employee because such employee does any of the following: (a) discloses, or threatens to disclose to a supervisor ... an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety...; ... *or* (b) objects to, or refuses to participate in any such activity, policy or practice in violation of a law, rule or regulation. (Emphasis added.)

### A.    Defendant's "activity, policy or practice" that was
### "in violation of law, rule or regulation"

Defendant asserts that Plaintiffs have failed to identify an "activity, policy or practice" and how it violated a "law, rule or regulation." They are wrong on both counts. Defendant's "activity, policy or practice" -- that its employees would not be allowed to work from home but were required to physically come to work or not be paid (TAC ¶¶ 135, 149, 152) -- was illegal. It violated Gov. Cuomo's COVID-19 pandemic-related "New York State On Pause" Executive Orders in two ways: 1) by treating its employees as "essential" workers who were allowed to physically work in its offices when they were not "essential"; and 2) by failing to allow "telecommuting"/"work from home."

Executive Orders 202.6 (issued March 18, 2020, effective March 20 at 8 p.m.), 202.7 (issued March 19, 2020, effective March 21 at 8 p.m.), and 202.8 (issued March 20, 2020, effective March 22 at 8 p.m.) each provided:

> *All* businesses and not-for-profit entities in the state *shall utilize, to the maximum extent possible, any telecommuting or work from home procedures that they can safely utilize.* Each employer shall reduce the in-person workforce

at any work locations by [50% in 202.6, 75% in 202.7, and 100% in 202.8] no later than [March 20 at 8 p.m. in 202.6, March 21 at 8 p.m. in 202.7, and March 22 at 8 p.m. in 202.8]. Any *essential* business or entity providing *essential* services or functions shall not be subject to the in-person restrictions. This includes.... (Emphases added.)

(https://www.governor.ny.gov/news/no-2026-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency; https://www.governor.ny.gov/news/no-2027-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency; https://www.governor.ny.gov/news/no-2028-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency)

Nothing having to do with real estate was on this list of "essential" businesses. Defendant does not even argue that the requirement of being "essential" to work in person was met, and therefore does not contest Plaintiffs' allegation that it violated the law by allowing employees to work in person rather than "reduce the in-person workforce" ultimately to zero.

While Defendant concedes one of the two violations of law, it contests the other. Defendant cites HC2, Inc. v. Delaney, 2020 WL 7480675, 2020 U.S. Dist. LEXIS 239308, *16-18 (S.D.N.Y. Dec. 18, 2020), characterizing it as "dismissing § 740 complaint because Cuomo's Executive Orders did not mandate creation of working from home policy." However, the Executive Orders involved in HC2 pre-dated, and were *not*, the Executive Orders Defendant violated. Id., 2020 WL 7480675, at *6 (neither Executive Order No. 202, issued on March 7, 2020, nor Executive Order 202.4, issued on March 16, 2020, required employers to offer work from home options). Here, Executive Orders 202.6, 202.7, and 202.8 explicitly required that "*[a]ll*" businesses "*shall*" "utilize, to the *maximum extent possible,*" "*any* telecommuting or work from home *procedures that they can safely utilize.*" (Emphases added.) Defendant has made no allegation, nor could it, that allowing Plaintiffs to work from home was not "safe." While Defendant has maintained that it did not have a work-from-home policy, the Orders on their face did not limit the requirement to only policies or procedures that pre-existed

the pandemic. See also People ex rel. Nevins v. Brann, 122 N.Y.S.3d 874, 875 (N.Y. Sup. Ct. 2020) ("the most notable aspect of the [executive] order [202.8] was probably that 100 percent of workers employed by nonessential businesses were directed to begin working from home"). Nor would it have made any sense in a global pandemic for Gov. Cuomo to order thousands upon thousands of employees who happened to work for employers who did not already have work-from-home policies -- but could do so safely -- to become out of work without an income.

Moreover, factually, Defendant did not actually enforce a no-work-from-home policy. Many employees, including but not limited to senior executives such as Cohen and Cherniak, were allowed to work from home. (TAC ¶¶ 142, 158, 117-118, 140) So Defendant had at least informal "work from home procedures."

**B.    Defendant's "violation creates and presents a substantial and specific danger to the public health or safety"**

Similar to Defendant taking the position that COVID-19 is not a disability, and that someone with a disability that creates a greater risk from COVID-19 has no right to accommodations, Defendant's argument -- that its violation of Gov. Cuomo's Executive Orders does not create a "substantial and specific danger to the public health or safety" even though those Orders were designed in the interest of public health to stem the spread of a global pandemic that has killed millions -- has major implications. Under Defendant's argument, employees who seek to follow such Orders and object to their violation would be subject to an impossible choice of either violating the law and risking their and the public's health or losing their livelihood.

Executive Order 202.8 provides expressly that its violation constitutes a violation of New York's "Public Health Law." The Executive Orders state that they were "directive[s] during a disaster emergency necessary to cope with the disaster" that had been declared a "State disaster emergency for the entire State of New York," and that they were designed to address the fact that "both travel-related cases and *community contact transmission of COVID-19* have

13

been documented in New York State and are expected to be continue." (Emphasis added.) Such Orders' "obvious motivations" were "[e]fforts to slow the spread of COVID-19." People ex rel. Nevins, supra, 122 N.Y.S.3d at 879. The government itself, in issuing the Executive Orders, concluded on their face that their violation created and presented a substantial and specific danger of the public health or safety of spreading the deadly coronavirus, and so Plaintiffs have stated this element of their claim under NYLL § 740. And while the law does not require a selfless motivation, and certainly not a 100% selfless motivation, Plaintiffs were concerned not just about their own health to avoid contracting COVID-19 -- which because COVID-19 is a highly contagious virus in turn protected their co-workers and the public -- but also for their co-workers and the public. Among other things, they sought multiple times while still working in the office to induce Defendant to adopt workplace health and safety precautions for COVID-19, adopted them themselves, and sought multiple times to get Defendant to abide by the Executive Orders designed to protect the public health and refused to violate those Orders themselves. (See, e.g., TAC ¶¶ 100, 101, 105, 106, 109, 111, 113, 119, 126, 129, 130-131, 136, 138-139, 146, 148, 154-157, 160-162, 165-167, 170-171)

Cases where the danger to the general public was far narrower than from a pandemic have found a sufficient danger to the public health and safety to deny a motion to dismiss. See, e.g., Villarin v. Rabbi Haskel Lookstein Sch., 942 N.Y.S.2d 67, 70 (1st Dep't 2012) (plaintiff school nurse reported an instance of suspected child abuse); Barker v. Peconic Landing at Southold, Inc., 885 F. Supp. 2d 564, 571 (E.D.N.Y. 2012) (plaintiff reported drug use by a retirement community's nurses); Rodgers v. Lenox Hill Hosp., 626 N.Y.S.2d 137, 141 (1st Dep't 1995) (plaintiff reported one incident in which paramedics pronounced a live woman dead without examining her or attempting resuscitation, attempted to cover up a second call to the same location, did not transport the critically ill patient to the closest hospital, and engaged in improper resuscitation); Bompane v. Enzolabs, Inc., 608 N.Y.S.2d 989, 991–92 (Sup. Ct.

14

1994) (plaintiff reported violation of the no smoking in the workplace section of the Public Health Law).

The cases relied on by Defendant are readily distinguishable from a pandemic that creates a widespread danger to public health. Reyes v. Energy Transp. Corp., No. 96 CIV. 3321 (JSM), 1997 WL 256923, at *4 (S.D.N.Y. May 16, 1997) (plaintiff, who testified in a personal injury case by a fellow seaman, complained about a violation of the Jones Act, a protectionist law requiring goods shipped within the U.S. to use ships made in the U.S. that also provides a private right of action for injured seamen); Remba v. Fed'n Employment & Guidance Serv., 76 N.Y.2d 801, 803 (1990) (involving fraudulent billing).

## IV.    ARAZI AND HYLEMON SUFFICIENTLY STATE GENDER-BASED HOSTILE WORK ENVIRONMENT CLAIMS

### A.    Hylemon's Claim Is Not Barred By The Statute Of Limitations

Defendant's statute of limitations affirmative defense, on which it has the burden of proof, rests on a gross minimization and mischaracterization of the allegations in the TAC, and therefore fails. Defendant asserts that "With respect to Hylemon, the complained-of acts described in the Am. Complt., which purportedly form the basis of the hostile work environment claims, occurred when she worked for Cohen from March 2014 to December 2016. (Am. Complt. ¶ 72-89)," and that "Plaintiffs vaguely state that [subsequently] 'Ms. Hylemon continued to have to do some work for Cohen, and he continued to yell at her.' (Am. Complt ¶ 86 [sic, as it quotes ¶ 90])." (Def. MOL pp. 14-15) Both of these assertions are far from accurate.

Many paragraphs of the TAC, not just paragraph 90, *explicitly* allege conduct by Cohen that contributed to creating a gender-based hostile work environment that occurred *both* during the time period Hylemon reported directly to Cohen from March 2014 to March 2016 *and* during the time period she continued to do some work for Cohen while she reported directly to Cherniak from March 2016 to March 2020. (TAC ¶¶ 72, 73, 78, 80, 81, 82, 85 ("Many times,

15

Mr. Cohen said to Ms. Hylemon "I'm going to kill you" when she did something that did not please him. This occurred both before and after Ms. Hylemon worked directly for Mr. Cohen.)) Other paragraphs contain allegations without specific dates.

Defendant also ignores that Hylemon alleges conduct by Cherniak while reporting to him from March 2016 to March 2020 that contributed to the gender-based hostile work environment. (TAC ¶¶ 93-98)

Defendant also ignores the numerous incidents within the limitations period that contributed to creating a gender-based hostile work environment that involved Arazi (TAC ¶¶ 69-70, 75) (who reported directly to Cohen from December 2016 to March 2020) that Hylemon either witnessed or heard about (TAC ¶¶ 71, 76), and that involved Julia (TAC ¶¶ 50-59) (who started working for Defendant in 2018 within the 3-year statute of limitations period) that Hylemon witnessed or heard about (TAC ¶¶ 60-62). Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) ("plaintiff who herself experiences discriminatory harassment need not be the target of other instances of hostility in order for those incidents to support her claim").

Just as it ignores the facts, Defendant also ignores the law regarding continuing violations. Defendant ignores that it is substantially easier to show a continuing violation under the NYCHRL than under Title VII. Morgan v. NYS Atty. Gen.'s Off., No. 11 CIV. 9389 PKC JLC, 2013 WL 491525, at *12 (S.D.N.Y. Feb. 8, 2013) (while granting motion to dismiss as time-barred national origin discrimination claim under Title VII but denying the motion as to the same claim under NYCHRL, holding that while Nat'l R.R. Passenger Corp. (Amtrak) v. Morgan, 536 U.S. 101 (2002), "limited this exception as it applies to Title VII claims, holding that the continuing violation doctrine is inapplicable to discrete, time-barred acts of discrimination, even when those acts are related to actionable ones," a "more generous" continuing violation doctrine applied to NYCHRL claims).

Even under federal law, however, the narrower continuing violation doctrine specifically applies to hostile work environment claims, as opposed to claims involving "discrete acts" like termination or failures to promote. As the U.S. Supreme Court has explained, the "very nature" of hostile work environment claims "involves repeated conduct" such that they are "different in kind from discrete acts." <u>Nat'l R.R.</u>, 536 U.S. at 115. "[C]onsideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." <u>Id.</u> at 105. As a result, "[t]he unlawful employment practice . . . cannot be said to occur on any particular day." <u>Id.</u>; <u>see also</u> <u>Petrosino v. Bell Atl.</u>, 385 F.3d 210, 220 (2d Cir. 2004) (*"[T]he nature of the claim determines what consideration will be given to the earlier conduct. For example, in the case of a hostile work environment claim, the statute of limitations requires that only one sexually harassing act demonstrating the challenged work environment occur within 300 days of filing; once that is shown, a court and jury may consider 'the entire time period of the hostile environment' in determining liability.*" The <u>Bonner v. Guccione</u>, 178 F.3d 581 (2d Cir. 1999), case cited by Defendant, pre-dated <u>Nat'l R.R.</u>, and addresses a Title VII claim, not a NYCHRL claim.

Here, even under Title VII, the continuing violation doctrine would apply to Hylemon's gender-based hostile work environment claims since Hylemon alleges multiple incidents both before and after the limitations period. Therefore, it is even more clear that the continuing violations doctrine applies to her claim under the NYCHRL.

Moreover, even if some incidents were time-barred, they can still be used as "background evidence in support of a timely claim." <u>Nat'l R.R.</u>, 536 U.S. at 113. Therefore, discovery would be the same regardless of whether the earlier incidents were time-barred.

**B.**    **Applicability Of "Severe Or Pervasive" Standard To NYSHRL Claims**

The "severe or pervasive" standard clearly does not apply under the NYCHRL. Williams v. New York City Hous. Auth., 872 N.Y.S.2d 27 (1st Dep't Jan. 27, 2009). Therefore, it does not make sense to use the court's time to determine whether it applies to some or all of Arazi's and Hylemon's NYSHRL gender-based hostile work environment claims, and whether their allegations meet that standard (which Plaintiffs believe they do), so they will withdraw them.

**C.**    **Arazi And Hylemon's Allegations Are Not Conclusory**

Contrary to Defendant's mischaracterization, Arazi's and Hylemon's gender-based hostile work environment allegations are not conclusory.  (See, e.g., TAC ¶¶ 75-86)

Moreover, Defendant is wrong on the legal standard for what constitutes a conclusory allegation. Defendant asserts that "Plaintiffs also allege that Cherniak 'frequently made jokes with sexual undertones.' (Am. Complt. ¶ 94). Plaintiffs fail to point any example of inappropriate jokes or comments Cherniak may have uttered." (Def. MOL p. 18) However, Plaintiffs' not alleging quotes or details of the dirty jokes does not make their allegation conclusory, even under Title VII. Hagan v. City of N.Y., 39 F. Supp. 3d 481, 500 (S.D.N.Y. 2014) ("While these allegations may be light on specifics, a plaintiff need not provide a list of every alleged discriminatory remark and incident of harassment to state a claim for hostile work environment. *Kassner [v. 2d Ave. Delicatessen Inc.],* 496 F.3d [229] at 240–41 [2d Cir. 2007]. Because Hagan identifies a number of specific events and generally alleges constant harassment, she has plausibly stated a claim. *See, e.g., id.* at 240 (plaintiff adequately pleaded hostile work environment by alleging 'continued harassment' and that her supervisor and co-workers had 'repeatedly made degrading comments towards [her], including, but not limited to, 'drop dead,' 'retire early,' 'take off all of that make-up,' and 'take off your wig''); *Torres v. Pisano,* 116 F.3d 625, 631 (2d Cir.1997) (plaintiff's corroborated deposition testimony that

she was 'constantly harassed' was sufficient to survive summary judgment, even if she 'could recall the exact dates and circumstances of only a few incidents of harassment'). Defendants' reliance upon cases dismissing claims at the summary judgment stage is misplaced: it is not necessary for Hagan to allege, much less establish, the elements of a prima facie case at this point. ... Hagan alleges that she was consistently harassed in a manner that, while probably not severe, was nonetheless plausibly pervasive. She has therefore stated a claim for hostile work environment."

Defendant further mischaracterizes the TAC and the law, contending that "Plaintiffs fail to point to any specific example of a situation in which Cohen treated female employees worse than male employees." (Def. MOL p. 18) However, Defendant provides a far-from-complete quote from the TAC, which alleges that Cohen was known for "verbally abusing, screaming at, berating, belittling, and humiliating employees, *particularly at female employees including Ms. Arazi and Ms. Hylemon*, often in front of other employees, creating a hostile work environment and a culture of fear at the office, and withholding praise. And in fact Mr. Cohen treated female employees, including but not limited to Ms. Arazi and Ms. Hylemon, *substantially worse than male employees, in ways consistent with his reputation and in the ways described below*, among other things." (TAC ¶¶ 72-73 (emphases added)) The TAC then proceeds "below" to make numerous specific allegations about how Arazi and Hylemon were treated worse than male employees (TAC ¶¶ 75-86), and how other women were treated worse than male employees (TAC ¶¶ 87-88).

### D.    Hearsay In A Complaint Must Be Considered On A Motion To Dimiss

"[U]nder Rule 12(b)(6), all of the factual assertions underlying Plaintiff's claim must be accepted as true and all reasonable inferences must be drawn in her favor. ... Accordingly, it is *inappropriate at this stage to consider whether or not the factual support underlying*

*Prince's claim of hostile work environment constitutes hearsay*." <u>Prince v. Madison Square Garden</u>, 427 F. Supp. 2d 372, 378 (S.D.N.Y. 2006) (emphasis added).

The case cited by Defendant, <u>J.S. ex rel. N.S. v. Attica Cent. Sch.</u>, 386 F.3d 107 (2d Cir. 2004), does not hold differently. Rather, while <u>J.S.</u> acknowledges like <u>Prince</u> that "we must accept as true all material factual allegations in the complaint," it excludes consideration of hearsay in "affidavits and other materials beyond the pleadings." <u>Id.</u> at 110.

Here, Arazi and Hylemon have not submitted any affidavits or other materials beyond the pleadings on their gender-based hostile work environment claims.

**E.     Arazi And Hylemon State Claims Under The NYCHRL**

Defendant's argument that Arazi's and Hylemon's gender-based hostile work environment allegations are mere "petty slights and trivial inconveniences" is premature. <u>Sanderson v. Leg Apparel LLC</u>, No. 1:19-CV-8423-GHW, 2020 WL 7342742, at *8 (S.D.N.Y. Dec. 14, 2020) ("petty slights and trivial inconveniences" is an affirmative defense "unavailable on a motion to dismiss").

In any event, their allegations are more than mere "petty slights and trivial inconveniences." (TAC ¶¶ 60-62, 69-88, 90, 93-98) (see, e.g., Cohen's repeated statements of "I'm going to kill you," TAC ¶ 85). <u>Garrigan v. Ruby Tuesday, Inc.</u>, No. 14 CIV. 155 LGS, 2014 WL 2134613, at *4 (S.D.N.Y. May 22, 2014) (denied motion to dismiss where plaintiff merely alleged defendant "treated Plaintiff less well by spreading rumors about her at work"). Plaintiffs allege far more than Cohen yelling as Defendant seeks to characterize it.

Defendant cites cases that are inapplicable both on the law and the facts. Arazi and Hylemon allege far more than the yelling in <u>Breitstein v. Michael C. Fina</u>, 2016 N.Y. Misc. LEXIS 3591, *39 (N.Y. Cnty 2016). <u>Wilson v. N.Y.P. Holdings, Inc.</u>, 2009 WL 873206, 2009 U.S. Dist. LEXIS 28876 (S.D.N.Y. Mar. 31, 2009), was found to have "ignor[ed] the *Williams* holding" about the standard for "petty slights and trivial inconveniences" being "true

exceptions" that "narrowly target concerns about truly insubstantial cases." <u>Bennett v. Health Mgmt. Sys., Inc.</u>, 936 N.Y.S.2d 112, 123 n.16 (1st Dep't 2011). <u>Inman v. City of New York</u>, No. 08 CV 8239 DAB, 2011 WL 4344015, at *7 (S.D.N.Y. Sept. 13, 2011), in turn relies on <u>Wilson</u> and so is bad law.

Moreover, in 2016 the NYCHRL was amended again to provide that "[e]xceptions to and exemptions from the provisions of this title shall be construed narrowly in order to maximize deterrence of discriminatory conduct" and approving of the approach of <u>Williams</u> and <u>Bennett</u>. Local Law 35 § 1-2 (Mar. 28, 2016); N.Y.C. Admin. Code § 8-130(b).

Arazi and Hylemon also sufficiently allege that the hostile work environment was gender-based, i.e. that they were "treated less well" because of their gender. <u>Williams</u>, <u>supra</u>. A number of the alleged incidents are explicitly sexual and/or differentiate between men and women, including Cohen's asking women inappropriate questions in interviews that he did not ask of men (TAC ¶¶ 87-88), the incident involving male executives inappropriately making light of Cohen's wife's comments about "blowjobs" (TAC ¶¶ 69-71), Cherniak's dirty jokes (TAC ¶¶ 94-96), the sexual harassment of their colleague Julia (TAC ¶¶ 50-62), and the pattern of discrimination against other women (TAC ¶ 74 ). Because Cohen and Cherniak "engage[d] in some harassment that is explicitly discriminatory and some that is not, the entire course of conduct is relevant to a hostile work environment claim," including the repeated incidents of their abusing Arazi and Hylemon, which they also allege male employees were not subjected to to the same degree (TAC ¶¶ 72-73). <u>Rasmy v. Marriott Int'l, Inc.</u>, 952 F.3d 379, 388 (2d Cir. 2020). These allegations are more than sufficient on a motion to dismiss. <u>Jamiel v. Maison Kayser@USA.com</u>, No. 119CV01389GBDSDA, 2019 WL 9362541, at *4 (S.D.N.Y. Dec. 19, 2019), <u>report and recommendation adopted sub nom.</u> <u>Jamiel v. Viveros</u>, No. 19CIV1389GBDSDA, 2020 WL 1847566 (S.D.N.Y. Apr. 13, 2020) (denying motion to dismiss on a racial hostile work environment claim where "[w]hile Jamiel does not specifically

identify his race, he alleges that Viveros and others mistreated him because he was not Mexican or Spanish. (Compl. at 5.) Moreover, while the particular comments alleged (*e.g.*, "zappato" and "Per[r]o") do not have an obvious connection to race, the comments could be considered derogatory (and were considered as such by Jamiel), and allegedly were directed at Plaintiff because of his race"); Lenart v. Coach Inc., 131 F. Supp. 3d 61, 69 (S.D.N.Y. 2015) ("Coach argues that Lenart's NYCHRL claim fails because he does not allege that he himself was treated differently than a similarly situated female colleague. (Def.'s Mem. 11–12). But he does allege that he was subjected to "unwanted gender-based conduct": Specifically, he claims he had to undergo extra interviews and psychological testing, whereas his female colleagues did not, and that he had heard that Walsh had expressed a preference for working with women. (Compl. ¶¶ 14–22). Although thin, such allegations are sufficient to state a claim, particularly after *Littlejohn.*"); Littlejohn v. City of N.Y., 795 F.3d 297, 311 (2d Cir. 2015) ("[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination"; instead, "[t]hey need only give plausible support to a minimal inference of discriminatory motivation.").

Moreover, the incidents involving Arazi and Hylemon will be relevant evidence on the claims of Julia, which Defendant does not move to dismiss, so discovery will the same even if the partial motion to dismiss were granted.

## V.    PLAINTIFFS STATE CLAIMS FOR RETALIATION IN VIOLATION OF THE NYCHRL AND NYSHRL

First, Defendant argues that Plaintiffs have not alleged an "adverse employment action because Defendant's actions did not 'affect the terms and conditions of the plaintiff[s]' employment.'" (Def. MOL p. 22) However, this is not the standard under the NYCHRL or NYSHRL. Mayers v. Emigrant Bancorp, Inc., 796 F. Supp. 2d 434, 446 (S.D.N.Y. 2011) (under NYCHLR, "plaintiff need not prove any adverse employment action; instead, he must

22

prove that something happened that would be reasonably likely to deter a person from engaging in protected activity"); Local Law 85 § 3/N.Y.C. Admin. Code § 8-107(7) ("The retaliation ... need not result in an ultimate action with respect to employment or in a materially adverse change in the terms and conditions of employment"); N.Y. Executive Law § 300 (effective Aug. 12, 2019).

Plaintiffs sufficiently allege conduct that would reasonably deter someone from suing and not settling. There are disputed issues of fact as to whether they were terminated, actually or constructively, or, as Defendant contends, abandoned their jobs. Plaintiffs expressly informed Defendant that they were not declining its offers, but were trying to get questions answered that Defendant repeatedly evaded. (TAC ¶¶ 201-202) (The fact that Julia obtained a job does not mean she would not have gone back to work for Defendant, and is not "appalling" as the company headed by a billionaire asserts, but merely reflects the need to earn a living after being unpaid by Defendant for many months.) Moreover, Plaintiffs allege that Defendant did not really want Plaintiffs to accept, as it had already found replacements and refused to agree Plaintiffs would be overtime-eligible in violation of the law, explain why it wouldn't still be illegal under the Executive Orders for them to work in person, or grant reasonable accommodations of working from home. (TAC ¶¶ 184-203)

Second, Plaintiffs sufficiently plead a causal connection based on temporal proximity alone, even under federal law. The termination of Plaintiffs employment on March 8, 2021 occurred only 4.5 months after the filing of their Complaint on October 22, 2020, and only 2 weeks after they failed to settle at mediation. Rasmy, supra, 952 F.3d at 391 (2d Cir. 2020) (5 months); Summa v. Hofstra Univ., 708 F.3d 115, 128 (2d Cir. 2013) (4-7 months); Gorzynski v. Jet Blue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010) (5 months); Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 168 (2d Cir. 2006) ("several months"); Grant v. Bethlehem Steel Corp., 622 F.2d 43, 45–46 (2d Cir. 1980) (8 months); Calhoun v. Laidlaw &

Co., No. 20-cv-6174 (GHW) (S.D.N.Y. Dec. 18, 2020) (7 months); Encarnacion v. Isabella

Geriatric Ctr., Inc., No. 1:11-CV-3757-GHW, 2014 WL 7008946, at *8 (S.D.N.Y. Dec. 12,

2014) ("Second Circuit has found the two acts sufficiently close when the lapse was between

twelve days and eight months"); Cronin v. St. Lawrence, No. 08-CV-6346 (KMK), 2009 WL

2391861, at *5 (S.D.N.Y. Aug. 5, 2009) (11 months); Suggs v. Port Auth. of N.Y. & N.J., No.

97 CIV. 4026 RPP, 1999 WL 269905, at *6 (S.D.N.Y. May 4, 1999) (6 months); Anderson v.

State of N.Y., 614 F. Supp. 2d 404, 430 (S.D.N.Y. 2009) (5-6 months).

It is certainly sufficient under the lesser standards of the NYCHRL and NYSHRL

(which was amended to require liberal construction in 2019, prior to the alleged retaliation).

See, e.g., Calhoun, supra.

The cases Defendant cites were under federal law and/or were not on motions to

dismiss.

Furthermore, Plaintiffs plead facts beyond temporal proximity supporting a causal

connection, including but not limited to a) pretext evidence such as Defendant's refusal to

answer several of their questions about returning to work; b) terminating Plaintiffs'

employment supposedly for not showing up for work when Plaintiffs said that they were not

abandoning their jobs and were still trying to get their questions answered; and c) that

Defendant had already found replacements for Plaintiffs, so Defendant was not sincere in its

offers for Plaintiffs to return. (TAC ¶¶ 184-203)

Third, Defendant reiterates its argument that Plaintiffs abandoned their jobs and so

Defendant had a legitimate business reason to terminate them. On a motion to dismiss,

however, Plaintiffs need not even allege a prima facie case, even under Title VII. Vega, supra,

801 F.3d at 84-87. Therefore, on a motion to dismiss, the analysis does not get to the second

stage of the McDonnell-Douglas burden-shifting framework. In any event, for the reasons

discussed above, disputed issues of fact preclude dismissal.

## VI.    PLAINTIFFS STATE CLAIMS FOR RETALIATION
## IN VIOLATION OF THE FLSA AND NYLL § 215

For the same reasons set forth in section V above, issues of fact preclude dismissal based on Defendant's argument that Plaintiffs did not allege adverse employment actions. The case Defendant relies upon is distinguishable because, in that case unlike here, "the undisputed facts show[ed] that both [Plaintiffs] had voluntarily tendered their letters of resignation before the filing of this action." Ayres v. 127 Rest. Corp., 12 F. Supp. 2d 305, 311 (S.D.N.Y. 1998).

Dated: New York, New York
June 11, 2021

Law Office of Michael Grenert, PLLC

By: _____s/_____
Michael E. Grenert
120 Riverside Blvd. #12T
New York, New York 10069-0524
Telephone Number: (917) 553-2050
Facsimile: (917) 725-8525
Email: mgrenert@grenertlaw.com

Law Office of Andrea Paparella, PLLC
Andrea M. Paparella, Esq.
4 Dunlap St.
Salem, MA 01970
Telephone:  (617) 680-2400
Facsimile:  (914) 462-3287
Email:  amp@andreapaparella.com